THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARIA WILLIAMS-BELL, on behalf of herself, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.:  1:18-cv-05386 |
| v. | ) ) | Hon. Joan B. Gottschall |
| BRITISH STANDARDS INSTITUTION, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION AND ISSUANCE OF NOTICE UNDER 29 U.S.C. § 216(B)**

01523934-3

# TABLE OF CONTENTS

I.        BRIEF FACTUAL BACKGROUND ........................................................................ 2

   A.     BSI's Auditing Function ......................................................................................... 2

   B.     BSI's FLSA Classification Process ....................................................................... 5

II.      ANALYSIS ............................................................................................................. 6

   A.     Class Certification Under The FLSA ..................................................................... 6

   B.     Conditional Class Certification Is Not Warranted. ............................................... 8

     (1)    Plaintiff's Deposition Testimony Demonstrates That She Is Exempt And,
Therefore, Is Not A Proper Class Representative. ......................................... 9

     (2)    The Common Policies And Plans Identified By Plaintiff Do Not Violate
The Law. ...................................................................................................... 10

   C.     Plaintiff's Proposed Notice ................................................................................. 16

     (1)    Statute Of Limitations .................................................................................. 16

     (2)    Plaintiff Is Not Entitled To The Proposed Class Members' Social
Security Numbers, Birthdates, E-mail Addresses, Or Telephone Numbers. ............. 17

     (3)    Notice Should *Not* Be Provided By Email In Addition To USPS
First Class Mail. .......................................................................................... 17

     (4)    The Notice Should Clearly State That the Court Has Not Made Any
Determinations. ............................................................................................ 18

     (5)    Sections Labeled "Further Information" and "**Please Note**"
Should Be Removed From the Notice. ......................................................... 18

     (6)    Limitations On Use Of Contact Information For Proposed Class ............................. 19

III.     CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Adams v. United States*, 350 F.3d 1216 (Fed. Cir. 2003) ............................................................ 16

*Bunyan v. Spectrum Brands, Inc.*, 2008 U.S. Dist. LEXIS 59278, at *1) ..................................... 8

*Copello v. Boehringer Ingelheim Pharms., Inc.*, 812 F. Supp. 2d 886
(N.D. Ill. Aug. 2, 2011) .......................................................................................................... 9, 10

*Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429 (S.D. Ill. 2012) ................................ 6

*Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill. 2003) ......................................... 7

*Frebes v. Mask Rests., LLC*, Case No. 13 C 3473, 2014 U.S. Dist. LEXIS 63531,
at *1 (N.D. Ill. May 8, 2014) ................................................................................................. 17, 18

*Gallardo v. Scott Byron & Co.*, 2014 U.S. Dist. LEXIS 4634, at *1 (N.D. Ill. Jan. 14, 2014) ...... 6

*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................................... 7

*Howard v. Securitas Sec. Servs., USA*, 2009 U.S. Dist. LEXIS 3913, *1
(N.D. Ill. Jan. 20, 2009) .............................................................................................................. 7

*Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, at *6 (N.D. Ill. July 1, 2013) ............................... 6

*Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365 (7th Cir. 2005) ...................................... 12

*Lenoir v. Combined Ins. Co. of Am.*, 2002 U.S. Dist. LEXIS 15651, *1
(N.D. Ill. Aug. 23 2002) ............................................................................................................ 12

*Magpayo v. Advocate Health & Hosps. Corp.*, 2018 U.S. Dist. LEXIS 26282, at *1
(N.D. Ill. Feb. 20, 2018) .............................................................................................................. 7

*Mullins v. Target Corp.*, 2011 U.S. Dist. LEXIS 39997, at *1 (N.D. Ill. April 13, 2011) .......... 12

*Owens v. Neovia Logistics, LLC*, 2019 U.S. Dist. LEXIS 54337, at *1
(N.D. TX March 14, 2019) ..................................................................................................... 11, 12

*Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012) ......................................... 12, 15

*Vazquez v. Ferrara Candy Co.*, 2016 U.S. Dist. LEXIS 110554, *16
(N.D. Ill. Aug. 12, 2016) ......................................................................................................... 7, 17

*Watt v. Fox Rest. Venture, LLC*, No. 17-cv-2104, 2019 U.S. Dist. LEXIS 26959, at *1
(C.D. Ill. February 20, 2019) ................................................................................................. 18, 19

*Williams-Bell v. Perry Johnson Registrars, Inc. et al.*, Case No: 1:14-cv-01002, at *1
(N.D. Ill. Filed February 12, 2014) ............................................................................................. 1

*Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775 (C.D. Ill. 2015) ........................................... 17

*Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) .......................................................... 7

## Statutes

29 C.F.R. § 541.202(a), (e) .................................................................................................... 9, 11

29 U.S.C. § 216(B) .................................................................................................................. 2, 6

29 U.S.C. § 255 ......................................................................................................................... 16

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARIA WILLIAMS-BELL, on behalf of herself, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:18-cv-05386 |
| v. | ) ) | Hon. Joan B. Gottschall |
| BRITISH STANDARDS INSTITUTION, INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION AND ISSUANCE OF NOTICE UNDER 29 U.S.C. § 216(B)

Despite engaging in substantial discovery to date, Maria Williams-Bell ("Plaintiff") has failed to satisfy her burden of demonstrating that her claims under the Fair Labor Standards Act ("FLSA") are appropriate for conditional certification as a collective action.[1]  Instead, Plaintiff's own deposition testimony demonstrates that Defendant BSI Group America Inc. (improperly named as British Standards Institution, Inc.) (hereinafter, "BSI") properly classified her as exempt and, therefore, she is not a proper class representative.[2]  In addition, although Plaintiff has identified common policies and plans that apply to all Client Managers, she has not satisfied her burden of demonstrating that those policies and plans are unlawful. Indeed, her own testimony completely refutes any suggestion that she and members of the putative collective action were

---

[1] This is not Plaintiff's first bite at the collective action apple as she previously sought to conditionally certify a class of ISO 9001 auditors for an FLSA collective action against another former employer.  This Court granted that employer's motion to compel arbitration. *Williams-Bell v. Perry Johnson Registrars, Inc. et al.*, Case No: 1:14-cv-01002 (N.D. Ill.  Filed February 12, 2014).

[2] Contemporaneously herewith, Defendant has filed a Motion for Summary Judgment on Plaintiff's individual claims under the FLSA and the Illinois Minimum Wage Law, which is ripe to be ruled on contemporaneously, as Plaintiff's own deposition testimony describing her job duties conclusively demonstrates that she is exempt.

subject to any unlawful common policies. Accordingly, BSI respectfully requests that the Court deny Plaintiff's Motion For Conditional Certification As A Collective Action And Issuance Of Notice Under 29 U.S.C. § 216(B) (the "Motion") and dismiss this case in its entirety.

## I.     BRIEF FACTUAL BACKGROUND

### A.     BSI's Auditing Function

BSI is an accredited certification registrar for the International Organization of Standardization's ("ISO") quality management system standards as well as other standards maintained by ISO and various international standardization organizations. (Ex. A, Plaintiff's Deposition Transcript ("Plf. Tr.") 35:9-14, 70:21-71:9; Ex. C, Timothy Green's Declaration ("Green Dec.") ¶ 3.) BSI's Quality Assurance Group's (the "QA Group") operations are structured and managed in five distinct areas, including Quality Management Systems, Environmental Health and Safety, Information Security Management Systems, Aerospace, and Automotive. (Ex. B, Green Dec. ¶ 4.) BSI's Regulatory Services Unit is responsible for auditing and certifying companies in the medical device sector. (Ex. B, Green Dec. ¶ 5.) Within each operational sector, BSI employs auditors to analyze its clients' business operations in a host of functional areas to determine whether their processes in those areas comply with the applicable international standard for the purpose of certifying the clients under that standard. (Ex. A, Plf. Tr. 28:12-29:8; Ex. C, Timothy Green's Deposition Transcript ("Green Tr.") 80:6-81:12.) BSI refers to its auditors internally as Client Managers because, in addition to conducting audits of BSI's clients, they are responsible for managing the client relationship as well. (Ex. A, Plf. Tr. 44:25-45:21, 46:12-16; 52:21-53:10; 89:10-25, 93:25-94:11, 95:3-21; Green Tr. 80:10-19.)

Although the qualifications, certifications, training requirements, and pay ranges for each operational group vary considerably, those differences are not material for purposes of analyzing

whether Plaintiff has satisfied her burden for conditionally certifying the proposed class. In fact, regardless of the operational sector to which a Client Manager is assigned, the type(s) of audit(s) he/she conducts, or the particular industry of the client he/she is auditing, Client Managers could not perform their job duties without specialized training and knowledge and years of industry experience. (Ex. A, Plf. Tr. p. 35:19-36:4, 18-25, 37:1-2; Ex. D, Declaration of Adrian Padilla Garcia ("Garcia Dec.") ¶ 22; Ex. E, Declaration of Joseph Virruso ("Virruso Dec.") ¶ 14; Ex. F, Declaration of Michael J. McNamara ("McNamara Dec.") ¶ 13; Ex. G, Declaration of Chandrashekar Dahagam ("Dahagam Dec.") ¶16; Ex. H, Declaration of Barbara Parsons ("Parsons Dec.") ¶ 22; Ex. I, Declaration of Andrew Bishop ("Bishop Dec.") ¶ 16; Ex. J, Declaration of Rose Koronkiewicz ("Koronkiewicz Dec.") ¶ 13; Ex. K, Declaration of James T. Law ("Law Dec.) ¶ 13; Ex. I, Declaration of Steven Fuller ("Fuller Dec.") ¶ 12.) In fact, Client Managers must first pass the relevant competency exam before conducting audits in a particular industry, which is only possible if the Client Manager has sufficient experience, specialized training, and knowledge of that industry.[3] (Ex. A, Plf. Tr. p. 35:19-15, 36:4, 18-25, 37:1-2, 66:12-24, 74:6-10, 75:5-12.) Moreover, Plaintiff's own deposition testimony makes it very clear that Client Managers must routinely exercise discretion and independent judgment at all phases of the audit process, which is a hallmark of exempt work. (Ex. A, Plf. Tr. 30:21-25, 57:13-21, 58:12-20, 61:12-23, 63:6-12, 69:16-18, 84:9-85:4, 87:5-17, 98:3-14, 106:9-18, 108:22-110:25, 111:5-13, 114:20-115:6, 116:3-117:16,153:15-24, 154:25-155:22, 157:5-11, 160:3-11,161:12-24, 162:14-19, 163:17-25, 165:1-4.)

---

[3] Plaintiff's Declaration incorrectly states that she did not choose the industries for which she performed assessments. (Dkt. 30-7:3 ¶ 8.) This statement directly contradicts her deposition testimony where she testified that even though BSI asked her to take the competency exams for various industries (T Codes) in order to conduct audits for clients in those industries, she only took the exams for the industries in which she had prior experience and knowledge and refused to complete the exams for two industries in which she lacked the requisite experience and knowledge to pass the exam. (Plf. Tr. 74:1-77:25.)

External certification bodies, such as ISO/IEC 17021:2015 and the International Aerospace Quality Group, establish the standards for conducting various types of audits, including, but not limited to ISO9001, AS9100 and AS9120 audits.  (Ex. D, Garcia Dec. ¶ 21.)  These certification bodies audit BSI and the other registrars to ensure they are strictly adhering to the requisite standards.  (Ex. A, Plf. Tr. 70:21-71:3; Ex. C, Green Tr. 79:18-80:1.)   Therefore, BSI has developed audit guidelines and report templates to ensure Client Managers adhere to the requisite standards. (Ex. A, Plf. Tr. p. 70:21-71:9, 71:21-72:11; Ex. D, Garcia Dec. ¶ 21.) Although Client Managers must adhere to BSI's audit guidelines to ensure the audit covers the areas mandated by the applicable standards, conducting an audit is not a standardized or rote process because every audit and client is different. (Ex. C, Green Tr. 65:8-67:15; Ex. D, Garcia Dec. ¶ 21; Ex. E, Virruso Dec. ¶ 14; Ex. F, McNamara ¶13; Ex. G, Dahagam Dec. ¶ 15; Ex. H, Parsons Dec. ¶ 19; Ex. I, Bishop Dec. ¶ 16; Ex. K, Law Dec. ¶ 13; Ex. L, Fuller Dec. ¶12.)  Client Managers routinely use their own discretion and independent judgment when managing the client relationship and when performing the various audit functions, including developing audit plans, conducting the audits, determining whether to issue nonconformances, approving or rejecting a client's corrective action plan, determining whether to approve such plans, assessing whether the client has met the applicable standards, and making certification recommendations.  (Ex. A, Plf. Tr. p. 27:20-28:1, 29:9-13, 45:10-21, 61:12-23, 69:9-22, 70:1-2, 89:10-25, 93:3-94:11, 95:3-21, 106:9-18, 108:22-109:1, 157:5-11; Ex. D, Garcia Dec. ¶¶ 13-14, 16, 21; Ex. E, Virruso Dec. ¶¶ 7-11, 14; Ex. F, McNamara ¶¶ 6-10, 13; Ex. G, Dahagam Dec. ¶¶ 7-8, 15; Ex. H, Parsons Dec. ¶¶ 8-12, 19, 20; Ex. I, Bishop Dec. ¶¶ 8-13, 16; Ex. J, Koronkiewicz 13; Dec. ¶¶ 5-8, 12; Ex. K, Law Dec. ¶¶ 6-10, 13; Ex. L, Fuller Dec. ¶¶ 5-9, 12-13.)

### B.    BSI's FLSA Classification Process

BSI maintains job descriptions for the various positions in the QA Group, including Client

Managers, and reviews those job descriptions on a periodic basis and updates them as needed.  (Ex.

C, Green Tr. 53:1-5; Ex. M, Declaration of Amy Holtz ("Holtz Dec.") ¶¶ 3-4.)  BSI's Human

Resources and Legal departments are responsible for analyzing each new position against the

exemption criteria set out in the FLSA and then determining whether to classify the position as

exempt or nonexempt based on that analysis.  (Ex. C, Green Tr. 53:17-54:1, 60:22-61:6, 64:15-22;

Ex. M, Holtz Dec. ¶ 5.)  When BSI makes material changes to the duties and responsibilities of an

existing position, BSI's Human Resources Department, in consultation with the Legal Department

as needed, re-evaluates whether the position is properly classified as exempt or non-exempt under

the FLSA.  (Ex. M, Holtz Dec. ¶ 6.)  On at least three occasions, Amy Holtz, BSI's former Senior

Vice President of Human Resources, contacted Tim Green or another member of operations to

determine if any material changes had been made to the duties and responsibilities of the Client

Manager position and each time was told that no such changes had been made.  (Ex. M, Holtz Dec.

¶ 7; Ex. C, Green Tr. 53:1-5.)  Because BSI had previously determined that the Client Manager

position was properly classified as exempt under the FLSA and there had been no material changes

to the duties and responsibilities for the Client Manager position, Ms. Holtz determined each time

that the position continued to be properly classified as exempt under various FLSA exemptions.

(Ex. M, Holtz Dec. ¶ 8.)[4]

---

[4] Contrary to Plaintiff's contention that BSI made no effort to ensure Client Managers were properly
classified as exempt, Mr. Green testified multiple times during his deposition that BSI's Human Resources
and Legal Departments were responsible for determining each employee's FLSA classification. (Ex. C,
Green Tr.  53:17-54:1, 60:22-61:6, 64:15-22.)  In fact, when asked to specifically identify the BSI employee
who would have the most knowledge regarding BSI's efforts in this regard, Mr. Green testified that Amy
Holtz was the person who would have knowledge on any internal assessments BSI conducted regarding the
FLSA classification for Client Managers. (*Id.* 98:4-9.)  Despite Mr. Green's response and the fact that
Plaintiff had noticed Ms. Holtz deposition for the following day, Plaintiff's counsel decided to postpone

Thus, for purposes of Plaintiff's Motion only, BSI concedes that all of the Client Managers are subject to a similar classification scheme,[5] are essentially performing the same job functions, and are subject to the same policies and procedures. However, as discussed below, Plaintiff's own testimony undermines her argument that she and other Client Managers were (1) subject to an unlawful classification scheme and/or (2) subject to common policies and plans that were unlawful.

## II.    ANALYSIS

### A.    Class Certification Under The FLSA

The FLSA permits an employee to maintain a collective action for unpaid overtime on behalf of herself and other similarly situated employees. *See Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, at *6 (N.D. Ill. July 1, 2013) (citing 29 U.S.C. § 216(b)). Federal courts in Illinois and elsewhere generally follow a two-stage approach when analyzing whether to certify a class for a collective wage action. *See Gallardo v. Scott Byron & Co.*, 2014 U.S. Dist. LEXIS 4634, at *59-62 (N.D. Ill. Jan. 14, 2014). At the initial or "notice" stage, the court must determine whether to conditionally certify the class and, if it does so, potential class members are provided notice of the action and given the opportunity to opt-in to the class. *See Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 436 (S.D. Ill. 2012).

In order to avoid "tremendous financial burden" on employers, Congress created the opt-in provision for class certification under 29 U.S.C. § 216(b), which requires the named plaintiff to affirmatively establish that she is "similarly situated" to the putative members. *Woods v. N.Y. Life*

---

Ms. Holtz' deposition at the last minute rather than allow her to testify regarding BSI's classification process. (Ex. N, Declaration of Deborah Livesay ("Livesay Dec."), ¶ 3.)

[5] Because different Client Managers qualify as exempt under one or more exemptions, including the administrative and professional exemption, and many also meet the criteria for highly compensated workers, BSI reserves its right to introduce evidence to this effect if the Court conditionally certifies the class proposed by Plaintiff.

*Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). Courts may conditionally certify a class for notice purposes under Section 216(b) only "in appropriate cases" where the "judicial system [would] benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). Therefore, at this stage, Plaintiff must make a factual showing, albeit modest, that all putative members were "victims of a common policy or plan *that violated the law*." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (quotations omitted)(emphasis added).

"Although lenient, the conditional certification standard is not a 'mere formality.'" *Vazquez v. Ferrara Candy Co.*, 2016 U.S. Dist. LEXIS 110554, *16 (N.D. Ill. Aug. 12, 2016)(denying conditional certification because although putative collective members were subject to a common policy, Plaintiff failed to show that that the policy violated the law). Moreover, "the court is under no obligation … to accept the plaintiff's allegations as true" and requires instead that Plaintiff make the requisite factual showing through record evidence. *Id.* at *16. Where, as here, the parties conducted substantial discovery prior to Plaintiff filing her motion for conditional certification, the Court may consider all record evidence in analyzing whether Plaintiff has satisfied her burden. *See, e.g.*, *Magpayo v. Advocate Health & Hosps. Corp.*, 2018 U.S. Dist. LEXIS 26282, at *24 (N.D. Ill. Feb. 20, 2018)("more stringent review can be appropriate at the initial stage when 'substantial discovery has already taken place'")(citations omitted); *Howard v. Securitas Sec. Servs., USA*, 2009 U.S. Dist. LEXIS 3913, at *8 (N.D. Ill. Jan. 20, 2009) *9 ("in conducting the notice stage determination at issue in this motion, the court will weigh the evidence in the record without any artificial bifurcation, giving due regard to the lenient burden of proof to which the plaintiffs are subject at this preliminary stage, to determine whether the factors favor a finding that the plaintiffs are 'similarly situated.'"); *Bunyan v. Spectrum Brands, Inc.*, 2008

U.S. Dist. LEXIS 59278, at *4, 11-14 (S.D. Ill. Jul. 31, 2008)(denying conditional certification after considering all evidence in record where the parties had "exchanged interrogatories, conducted depositions, and exchanged a large number of documents, "because "[t]he Court cannot close its eyes to the amount of discovery already performed in this action.").

Here, the parties have conducted substantial discovery that sheds light on the issue of conditional certification. Plaintiff has produced approximately 240 pages of documents and BSI has produced almost 13,000 pages of documents. (Ex. N, Livesay Dec. ¶ 3.) In addition, BSI's counsel deposed Plaintiff on May 9, 2019, and Plaintiff's counsel deposed BSI's 30(b)(6) corporate representative on May 15, 2019. (Ex. A, Plf. Tr. p. 1; Ex. C, Green Tr. p. 1.) Although Plaintiff's counsel had also noticed the deposition of BSI's former Senior Vice President of Human Resources, Amy Holtz, for the following day, they notified Defendant that they were postponing her deposition late on the afternoon before her deposition. (Ex. N, Livesay Dec. ¶¶ 4-5.) Despite also indicating that they would be in touch at a later date to reschedule Ms. Holtz' deposition, they have yet to do so in the eight weeks since the postponement. (*Id.* at ¶ 6.) Given the substantial discovery conducted to date, the court should consider all of the record evidence available at this point when analyzing the Motion. *See Bunyan*, 2008 U.S. Dist. LEXIS 59278, at *13-14.

    **B.**    **Conditional Class Certification Is Not Warranted.**

Plaintiff seeks to conditionally certify a class under FLSA 216(b) consisting of: "All present and former employees of BSI Group, Inc. who were employed as Client Managers at any time from [THREE YEARS PRECEDING COURT APPROVAL OF NOTICE] through the present." (Dkt. 30-1, p. 2). The Court should deny Plaintiff's Motion for the following reasons, which are discussed in more detail below. First, the relief specifically sought by Plaintiff is futile because Plaintiff's individual FLSA claims have no merit and, therefore, she cannot properly

represent the putative class. Second, Plaintiff's own testimony demonstrates that although the putative class may have been subject to common policies or plans, including a similar classification scheme, those policies and plans were not unlawful and, therefore, she has failed to satisfy her burden even under the most lenient standard of review.

(1)    <u>Plaintiff's Deposition Testimony Demonstrates That She Is Exempt And, Therefore, Is Not A Proper Class Representative.</u>

"An FLSA collective action under § 216(b) may not proceed without a plaintiff to lead it." *Copello v. Boehringer Ingelheim Pharms., Inc.*, 812 F. Supp. 2d 886, 897 (N.D. Ill. Aug. 2, 2011)(after dismissing one named plaintiff's FLSA claims and finding the other named plaintiff contractually waived her right to lead or participate in a collective action, court denied motion to conditionally certify FLSA collective action). Here, as detailed in BSI's brief in support of its Motion for Summary Judgment on Plaintiff's individual FLSA claims, Plaintiff's deposition testimony completely refutes her claim that BSI improperly classified her as exempt and violated the FLSA by not paying her overtime. (Dkt. 43-1.)

The FLSA provides a complete exemption from the overtime pay requirement for "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. 213(a)(1). An employee is exempt under the administrative exemption when she is "compensated on a salary or fee basis at a rate of not less than $455 per week" and her primary duty was (a) "the performance of … non-manual work directly related to the management or general business operations of the employer or the employer's customers" and (b) include[d] the exercise of discretion and independent judgment with respect to matters of significance." *Hundt*, 294 F.R.D. at 103 (*citing* 29 C.F.R. § 541.200(a)).

As detailed in BSI's brief in support of its Motion for Summary Judgment (Dkt. 43-1), Plaintiff's deposition testimony unequivocally demonstrates that BSI properly classified her as

exempt under the administrative exemption because she: (a) earned approximately $1,250 per week; (b) performed non-manual work directly related to the management or general business operations of BSI's customers by, for example, auditing various quality management functions of BSI's clients, including quality control, purchasing and procurement, safety, risk management, and resource management, and (c) routinely exercised discretion and independent judgment with respect to matters of significance by, for example, managing BSI's business relationship with the clients she audited, identifying the client's nonconformances, determining whether to accept or reject a client's corrective action plan, and recommending whether a client should receive the ISO 9001:2015 certification. (Ex. A, Plf. Tr. 29:9-25, 30:1-19, 45:4-21, 46:12-16, 50:18-25, 61:12-23, 63:6-12, 82:7-25, 83:1-7, 98:3-14, 155:1-22, 157:5-11.) Accordingly, because Plaintiff is the only named Plaintiff in this action, if the Court grants BSI's Motion for Summary Judgment, it should deny Plaintiff's Motion for conditional certification as there would be no named plaintiff to lead the collective action. *See Copello*, 812 F. Supp. 2d at 897.

(2)    The Common Policies And Plans Identified By Plaintiff Do Not Violate The Law.

Although Plaintiff points to a variety of BSI's policies and plans in her Motion, some accurately and some not, she fails to provide any support for her contention that those policies and plans are unlawful; nor can she. Indeed, it is very telling that Plaintiff chose to submit a declaration to support her Motion rather than cite to a single line from her deposition, which lasted for more than six hours and covered the very policies, plans, and job functions at issue. As the discussion below demonstrates, the information included in Plaintiff's declaration is intentionally limited, completely inconsistent with her deposition in some instances, and does not accurately address whether BSI's common policies and plans are unlawful, whereas her comprehensive deposition testimony goes to the very heart of this critical issue.

First, Plaintiff correctly states that Client Managers have the same compensation plan, with fixed base salaries ranging from approximately $60,000 to $118,000. (Dkt. 30 p. 3.) However, she points to absolutely nothing about the compensation plan that is unlawful, including as it relates to the Client Managers' exempt classification. To satisfy the salary test for an FLSA exemption, an employee need only earn a fixed salary of $455 per week. Even the lowest paid Client Manager far exceeds that threshold as a Client Manager earning $60,000 per year earns in excess of $1,100 per week. Therefore, Plaintiff has identified nothing about BSI's compensation plan that is inherently unlawful or that violates the FLSA.

Plaintiff next incorrectly argues that that Client Managers "are not permitted to deviate from BSI's written directives" for performing audits and instead do nothing more than "apply well-established BSI Group policies and procedures, described in manuals provided by BSI Group, in order to report whether any given client has met certain business standards." (Dkt. 30 p. 3.) This inaccurate assertion clearly implicates the FLSA's administrative exemption, which requires the exercise of discretion and independent judgment, which "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(a), (e). However, "[t]he fact that an employee must follow standard procedures and guidelines does not indicate the lack of professional discretion and judgment" necessary to meet the FLSA's administrative exemption. *Owens v. Neovia Logistics, LLC*, 2019 U.S. Dist. LEXIS 54337, at *21-22 (N.D. TX March 14, 2019)(finding employee who conducted audits of his employer's clients exercised discretion and independent judgment "even if [he] worked with a standard 'toolbox' of continuous improvement methodologies [because] he still exercised his independent judgment in determining which methodologies to use in each circumstance, as well as when and how to use them."); accepted by *Owens v. Neovia Logistics*,

LLC, 2019 U.S. Dist. LEXIS 53189 (N.D. TX March 28, 2019); *see also Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 580-81 (7th Cir. 2012)(finding sales representatives exercised significant discretion and independent judgment despite the constraints placed on them by the regulatory environment in the pharmaceutical industry)(citing *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374-75 (7th Cir. 2005)("noting that the presence of strict regulatory limits channeling employee discretion did not prevent exercise of independent judgment"); *Mullins v. Target Corp.*, 2011 U.S. Dist. LEXIS 39997, at *24-25 (N.D. Ill. April 13, 2011)(plaintiff's extensive training and use of the directives that investigators were expected to follow does not imply a lack of discretion or judgment). Thus, courts have soundly rejected the notion that Plaintiff seeks to advance here – that performing one's job in compliance with certain standards or regulations is tantamount to simply applying well-established techniques, procedures or specific standards described in manuals.

Furthermore, Plaintiff's argument, as well as the statement in her Declaration, that she was not permitted to deviate from BSI's written directives when conducting an audit is contrary to the record evidence, including Plaintiff's own sworn deposition testimony.[6] (Dkt. 30:3, Dkt. 30-7:3 ¶ 9.) First, Plaintiff's reliance on select portions of Tim Green's deposition is misplaced because these cherry picked excerpts do not accurately convey the totality of Mr. Green's testimony regarding a Client Manager's ability to deviate from BSI's written directives. Instead, Mr. Green actually testified as follows:

> Counsel: Okay. Do you agree that the CMs [Client Managers] are expected to comply with that training and to comply with BSI procedures and rules and that sort of thing, correct?

---

[6] Despite Plaintiff's conflicting Declaration statements, her deposition testimony should be controlling here. *Lenoir v. Combined Ins. Co. of Am.*, 2002 U.S. Dist. LEXIS 15651, at *14-15 (N.D. Ill. Aug. 23 2002) (finding that "deposition testimony controls when a conflict arises between a sworn affidavit and that testimony, unless there is a demonstrably reasonable mistake in the deposition." (citations omitted).

| | |
|---|---|
| T. Green: | Yes. |
| Counsel: | They're not really allowed to deviate from it; is that right? |
| T. Green: | The procedures and processes provide the structure by which they do the audit. Once they arrive on-site, the structures and procedures define their responsibilities. But from the moment they arrive on-site, they are responsible for identifying who they talked to, the audit trails that they follow, the decisions that they make. So the procedures and policies are there to provide structure for the day. |

*****

| | |
|---|---|
| Counsel: | So when they're out in the field performing audits, they're really just comparing the client to the standards to see if they're in compliance; is that right? |
| T. Green: | Not completely right. |
| Counsel: | Why not? |
| T. Green: | So they have to really do a thorough analysis of each process that they are looking at to determine the risks and determine what samples that they take to ultimately determine compliance with the company's procedures and standards… They're [also] looking at the actual services and products that have been manufactured in accordance with those to make sure that they're being manufactured or the services are being delivered in compliance with the company's procedures and the standard. |

(Ex. C, Green Tr. 65:8–66:1, 66:13-67:15.) In addition, Plaintiff's own testimony undermines her argument and bolsters Mr. Green's testimony in this regard as she testified that her audit responsibilities required her to take a "deep dive" into various processes, including quality control, purchasing and procurement, quality management, safety, risk management, and resource management and to conduct surface reviews of legal and regulatory compliance. (Ex. A, Plf. Tr. 27:20-28:1, 29:9-30:19, 82:7-83:7.) Plaintiff also testified that she determined whether a client was conforming to the applicable standard by the "[r]eview of records, observation of practices, interviews with employees, looking at previous records, [and] sampling their processes." (*Id.* 58:12-17.) Further, Plaintiff testified that when analyzing specific processes, such as risk management, she relied on her own knowledge of the common risk factors in the client's particular industry to analyze whether the client was properly managing and mitigating risk. (*Id.* 84:9-85:4, 87:5-17.) Clearly, Plaintiff's own knowledge base was not part of BSI's written directives.

Further undermining the argument that Client Managers do nothing more than apply well-established policies and procedures and cannot deviate from BSI's directives during an audit is Plaintiff's testimony that she had to consider "many, many different factors" when developing an audit plan, including, but not limited to, previous audit findings and noncomformances, time management, and the availability of key employees. (*Id.* 58:3-11, 109:8-22, 110:1-111:13, 119:10-14.) When determining which employees to interview, Plaintiff analyzed the client's processes to determine the relevant individual within each such process, which typically included managers and directors, so that she could "get an overall review of how the process works." (*Id.* 153:15-24.) Plaintiff also testified that when auditing a client, she took into consideration the client's "experience, the longevity of their certification … [and] special circumstances that an organization may be going through in terms of their readiness and their compliance." (*Id.* 57:13-21.) There would be no reason to consider so many factors or analyze a client's particular situation if Client Managers only needed to follow directives from a manual when auditing the various processes within a client's business operations.

In addition, Plaintiff, like all Client Managers, exercised absolute discretion with regard to whether or not to issue a nonconformance, which is an area that does not conform with either the applicable standard or the client's own requirements. (*Id.* 58:3-11, 119:10-14; Ex. C, Green Tr. 68:3-6.) Plaintiff acknowledged that as "an experienced auditor, [she] had a good eye for what was conforming and what wasn't conforming," which refutes any suggestion that she could make an effective determination about conformance by simply following a manual, and further underscores her use of discretion and independent judgment when making such determinations. (Ex. A, Plf. Tr. 58:18-20.) Moreover, the fact that Plaintiff sometimes chose to issue a nonconformance even though a previous Client Manager had opted not to do so for the same issue

undermines the notion that Client Managers blindly followed BSI's written directives. (*Id.* 61:12-23.) If such were the case, Plaintiff would not have been at liberty to exercise her discretion and independent judgement to reach a different conclusion than the one reached by the Client Manager who had previously audited the same client.

Plaintiff, like all Client Managers, also exercised complete discretion over whether to approve the corrective action plan that a client submitted detailing how the client planned to resolve any noncomformances identified during the audit. (*Id.* 157:5-11; Ex. C, Green Tr. 68:7-69:7.) Such decisions were critical, and thus a matter of significance, because BSI could not certify or recertify a client under the applicable standard unless the Client Manager approved the client's proposed corrective action plan. (Ex. A, 155:1-22.) Finally, Plaintiff, like all Client Managers, also had complete discretion over whether or not to recommend that a client be certified under the applicable standard, which she did after reviewing relevant records, observing the client's practices, interviewing key employees, and sampling their processes. (*Id.* 58:12-17, 69:16-18, 98:3-14; Ex. C, Green Tr. 69:9-70:2.) Although neither Plaintiff nor the other Client Managers made the final certification decision, the Seventh Circuit has made it clear that a lack of final decisionmaking authority does not undermine the exempt nature of an employee's work. *See, e.g., Schaefer-LaRose*, 679 F.3d at 577-578 ("the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.").

Thus, although all Client Managers are indeed classified as exempt and are subject to a similar compensation plan, there is absolutely nothing unlawful about that classification or the

compensation plan given the fact that, as discussed above and in BSI's Motion for Summary Judgment (Dkt. 43-1), all of the work they perform is exempt. Further, although Client Managers are otherwise subject to common policies, Plaintiff's own testimony demonstrates that she mischaracterized those policies in her Motion and that those policies are not unlawful. Thus, even under the most lenient standard, Plaintiff has not satisfied her burden of identifying a common policy or plan that is unlawful and her Motion should be denied. *See Vazquez*, 2016 U.S. Dist. LEXIS 110554, at *18 (denying motion for conditional certification where members of the putative class were subject to a common policy, but plaintiff failed to show that the policy violated the law).

### C.    Plaintiff's Proposed Notice

While BSI denies that class certification is appropriate, if the Court grants Plaintiff's Motion, the proposed notice to the class should be amended, as discussed below, because it is unfairly prejudicial as currently proposed.[7]

### (1)    Statute Of Limitations

Plaintiff's proposed notice references the incorrect statute of limitations period of three years, and thus is overbroad in scope. Under the FLSA, the statute of limitations is generally two years, and only extends to three years where the employer's violation was willful. 29 U.S.C. § 255. To obtain the benefit of the three-year limitations period, the plaintiff must plead, and has the burden of proving, that the violation was willful. *See, e.g., Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) (stating that "the employee bears the burden of proving the willfulness of the employer's FLSA violations"). Here, Plaintiff has presented nothing beyond bare allegations

---

[7] In the event the Court orders issuance of notice, the parties should be permitted time to negotiate over the form and substance of the notice. However, in an abundance of caution, Defendant points out some notice defects.

that Defendant's purported violation was willful, which is not sufficient. *See Vazquez*, 2016 U.S. Dist. LEXIS 110554, at *16 ("the court is under no obligation … to accept the plaintiff's allegations as true"). In fact, record evidence demonstrates that to the extent BSI has misclassified Client Managers, which it denies, that decision was not a willful violation of the FLSA. To the contrary, BSI periodically reevaluated whether the Client Managers' exempt classification was appropriate and, in each instance, made an informed decision that Client Managers were properly classified as exempt. (Ex. M, Holtz Dec. ¶¶ 7-8.) As a result, the two-year statute of limitations period applies, and the proposed notice should be modified accordingly.

> (2)     Plaintiff Is Not Entitled To The Proposed Class Members' Social Security Numbers, Birthdates, E-mail Addresses, Or Telephone Numbers.

The Court should deny Plaintiff's request for BSI to provide social security numbers, birthdates, e-mail addresses, and telephone numbers for the proposed class members for purposes of sending notices. Social security numbers and birthdates are of marginal use in locating putative class members and the marginal use is outweighed by the privacy concerns of those members. *See Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 783-84 (C.D. Ill. 2015) (sua sponte finding the marginal use of birthdates and the last four digits of social security numbers was outweighed by the privacy concerns of potential plaintiffs). Similarly, Plaintiff can provide adequate notice without obtaining e-mail addresses and phone numbers for the proposed class members. *See Frebes v. Mask Rests., LLC*, Case No. 13 C 3473, 2014 U.S. Dist. LEXIS 63531, at *21-22(N.D. Ill. May 8, 2014) (finding that names and mailing addresses were sufficient for providing notice and that phone numbers and e-mails need not be produced.)

> (3)     Notice Should ***Not*** Be Provided By Email In Addition To USPS First Class Mail.

Plaintiff's request to provide notice by e-mail in addition to USPS First-Class Mail should

be denied, as it is duplicative and unnecessary. Notice by USPS First-Class Mail is sufficient to inform potential class members of their rights. *See Frebes*, 2014 U.S. Dist. 63531, * 21. Proposed class members may view duplicate and repeat notices as an endorsement by the Court of the merits of Plaintiff's claims, which is not only untrue, but also fundamentally unfair. *See Watt v. Fox Rest. Venture, LLC*, No. 17-cv-2104, 2019 U.S. Dist. LEXIS 26959, at *25 (C.D. Ill. February 20, 2019) (finding that second notice was unnecessary and could be viewed as judicial endorsement of plaintiff's claims).

        (4)    <u>The Notice Should Clearly State That the Court Has Not Made Any Determinations.</u>

The Notice also should be amended so that it is clear at the outset that the Court has not made a determination on the merits of Plaintiff's allegations. Currently, this language (which Defendant is agreeable to) is buried at the end of the first page. Defendant requests that this language be placed in bold at the top of the notice.

        (5)    <u>Sections Labeled "Further Information" and "**Please Note**" Should Be Removed From the Notice.</u>

These sections are repetitive and prejudicial. Despite Section VIII of the Notice providing complete contact information for Plaintiffs' counsel, the very next section, misleadingly entitled "Further Information", encourages the proposed class members to contact Plaintiff's counsel by the very same means set forth in Section VIII. Further, although Section IV, "Your Right to Participate In This Suit," already provides the time limit for joining the class, the "Please Note" section improperly encourages potential class members to return the opt-in form as soon as possible. Plaintiff has provided no legitimate justification for including Section IX and the unnumbered section "**Please Note**" in the Notice, and BSI respectfully requests that the Court order Plaintiff to delete those sections if she is permitted to issue the notice.

(6)     <u>Limitations On Use Of Contact Information For Proposed Class</u>

Finally, BSI requests that a protective order be entered (a) restricting use of the disclosed addresses, and any other putative class member information provided to Plaintiff for purposes of providing notice, for the sole purpose of sending notice of this litigation; (b) restricting communications with potential opt-ins to issuance of a Court-approved notice by U.S. mail; and (c) restricting Plaintiff's counsel's subsequent written communications with potential opt-in class members. *See Watt,* 2019 U.S. Dist. LEXIS 26959, at \*25 (prohibiting subsequent reminder notice prior to end of notice period).

## III.     CONCLUSION

For all of the foregoing reasons, BSI respectfully requests that the Court deny Plaintiff's Motion, including her request to send to potential collective action members the proposed notice attached as Exhibit 1 to her Motion.  Alternatively, if the Court grants Plaintiff's Motion, BSI respectfully requests that the proposed notice be amended as discussed above.

Respectfully submitted this 15th day of July 2019.

BSI GROUP AMERICA INC.

/s/ *Raanon Gal*
Raanon Gal (Admitted *Pro Hac Vice*)
Joseph M. English (Admitted *Pro Hac Vice*)
Deborah J. Livesay (Admitted *Pro Hac Vice*)
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868 Telephone
(770) 434-7376 Facsimile
rgal@taylorenglish.com
jenglish@taylorenglish.com
dlivesay@taylorenglish.com

-AND-

Jeffrey T. Karek

01523934-3 19

IL Bar No. 6286547
MAURICE WUTSCHER LLP
The Loop Center Building
105 W. Madison Street, 18th Floor
Chicago, Illinois 60602
(224) 518-4446 Telephone
(312) 284-4751 Facsimile
jkarek@MauriceWutscher.com

## CERTIFICATE OF SERVICE

I, Raanon Gal, an attorney, hereby certify that on July 15, 2019, service of a true and correct copy of this document was accomplished pursuant to ECF on all parties who are Filing Users.

/s/ *Raanon Gal*
Raanon Gal (Admitted *Pro Hac Vice*)
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868 Telephone
(770) 434-7376 Facsimile
dlivesay@taylorenglish.com

Attorneys for BSI Group America Inc.